1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JULIUS M. ROBINSON,                         No.  2:13-cv-0604 WBS AC P

12                      Petitioner,

13         v.                                     FINDINGS AND RECOMMENDATIONS

14   G.W. LEWIS,

15                      Respondent.

16

17         Petitioner brought a pro se petition for writ of habeas corpus, pursuant to 28 U.S.C. §

18   2254, on March 28, 2013.  ECF No. 1.  Following dismissal on January 7, 2014, and reversal of

19   that judgment over six and a half years later following extensive appellate proceedings,

20   respondent answered on January 7, 2021.  ECF No. 50.  Petitioner, now represented by appointed

21   counsel, replied on June 7, 2021.  ECF No. 53.  The petition challenges petitioner's 2009

22   conviction for two counts of attempted first degree murder and related offenses.  ECF No. 1.  The

23   case proceeds on Claims One through Five, a sixth claim having been voluntarily dismissed.  See

24   ECF No. 47.

25                              BACKGROUND

26   I.     Proceedings in the Trial Court

27         A.  Preliminary Proceedings

28         Petitioner and a co-defendant were charged in Sacramento County with two counts of

1

attempted murder; malicious discharge of a firearm at an inhabited dwelling causing great bodily injury; and malicious discharge of a firearm from a motor vehicle causing great bodily injury. Numerous gun and gang-related enhancements were alleged.

Petitioner was first appointed counsel in May 2005.  Two years later, after two successful Marsden motions (and many more unsuccessful Marsden motions) and three different lawyers,[1] petitioner was granted the right to represent himself following a Faretta hearing.[2]  I CT 30 (ECF No. 49-1 at 41).  After repeated continuances of the trial date at petitioner's request, he moved for appointment of counsel.  The request was initially denied as untimely, and an imminent trial date was confirmed.  I CT 35 (ECF No. 49-1 at 46); I RT 59-60 (ECF No. 49-5 at 29-30).  However, a renewed motion for appointment of counsel was granted on July 25, 2007.  I CT 36 (ECF No. 49-1 at 47).  Petitioner was accordingly represented by counsel at trial, which did not begin until February 2009.  I CT 44 (ECF No. 49-1 at 55).

Petitioner's co-defendant did not proceed to trial.[3]

B.  The Evidence Presented at Trial[4]

1.  Prosecution Case

In March 2005, petitioner was a member of the Nogales Crips, a street gang in the Del Paso Heights area of Sacramento.  At the time, there was ongoing retaliatory violence between the Nogales Crips and its archrivals, the Del Paso Heights Bloods and Elm Street Bloods.  A Crip named Shepard Scott had been killed, and Blood member Anthony Weaver was believed to have been responsible for the killing.  On two occasions prior to the shooting involved in this case, Weaver had been the target of unsuccessful assassination attempts.

Around 1:00 p.m. on March 26, 2005, Anthony Weaver, Corey Yerger, Yerger's uncle

---

[1]  See People v. Marsden, 2 Cal.3d 118 (1970); see also III CT 679-680 (ECF No. 49-3 at 79-80) (People's Opposition to Defendant's Motion to Substitute Counsel) (summarizing procedural history).
[2]  Faretta v. California, 422 U.S. 806 (1975).
[3]  Petitioner represents that the charges against his co-defendant, who had been identified as the driver of the Mercedes, were dropped "in the interests of justice."
[4]  This summary is adapted in part from the opinion of the California Court of Appeal, ECF No. 49-15 at 2-5.

2

Andrea Wingfield, and others were hanging out in the garage of Weaver's house on Fell Street in Sacramento.  Except for Wingfield, everyone in the garage was a Blood gang member.  Wingfield was standing by the open garage door and other men were shooting dice.  Yerger was in the driveway, eating barbecued ribs.

A battered white Mercedes pulled around the corner and turned onto Fell Street.  Someone in the garage yelled, "Here come the Crips," and everyone scattered.  As the Mercedes drove by, the person in the front passenger seat leaned out of the window and fired several shots at the garage.  Yerger yelled that he was hit, and blood started gushing from his neck.  Weaver was shot in the arm.  As a result of the shooting, Yerger was paralyzed from the waist down.

A Cadillac carrying two young men pulled out of the Fell Street house immediately after the shooting and started chasing the Mercedes, precipitating a furious gun battle between the occupants of the two cars.  Petitioner's fingerprints were later found on the Mercedes.

After being initially called to the scene of the Fell Street shooting, Sacramento Police Officer Filmore Graham was rerouted by dispatch to a house on Cypress Street.  There he located petitioner, who was holding his hand over his bleeding right eye.  Petitioner refused to give any information to Graham or tell him how he was injured.

During the ensuing police investigation, both victims identified petitioner as the shooter. The prosecutor played a videotape of Anthony Weaver telling police that petitioner was the shooter, had hung out the window, and had shot with a silver gun.  The prosecutor also played an audiotape of Corey Yerger pointing to petitioner's photo in a photo lineup and identifying him as the shooter.  Andrea Wingfield had also picked petitioner out of a photo lineup, and had identified him as the shooter at the preliminary hearing.[5]

A gang expert testified that at the time of the shootings, petitioner was a validated member of the Nogales Crips, whose rivals were the Del Paso and Elm Street Bloods.  The expert opined that Blood member Weaver was the target of the Fell Street shooting, since he was believed to

---

[5]  At trial, all three of these witnesses testified that they could not identify or describe the shooter and did not remember any details of the incident.  All three witnesses testified involuntarily and in custody after arrest to secure their appearance.

3

have been responsible for the assassination of noted Crip Shepard Scott.  An attempt to kill Weaver at a gas station three days earlier had gone awry.  The expert stated his opinion that the shooting was in retaliation for the killing of Scott and was done to benefit and promote the Crips gang.

2.  Defense Case

Deric Tennessee, a former Blood gang member, testified that he was in the garage at the time of the Fell Street shooting.  When the Mercedes drove by "all hell broke loose."  Tennessee had seen someone in the garage with a gun in his pants, but he did not know where the shots were coming from.  Tennessee saw Yerger with a gunshot wound to the side of his neck.  It was Tennessee's opinion, based on his observations and having been shot himself, that the bullet that caused Yerger's neck wound could not have been fired from the street.

Petitioner took the stand and admitted that on the day of the shooting he was associated with the Nogales Crips.  He also admitted that Shepard Scott had been a close friend and that he had heard the rumor that Scott had been murdered by the Bloods.  Petitioner testified that he was in the front passenger seat of the Mercedes that drove by the Fell Street garage.  However, the purpose of the trip was not to shoot anybody, but to pick up some marijuana.  As the Mercedes drove by the Fell Street house, petitioner saw people scattering in the front yard and heard gunshots.  His friend "Boo," who was in the back seat said, "those dudes is tripping," which defendant understood to mean the "dudes" were shooting at their car.  None of the shots hit the Mercedes.  The Mercedes kept driving to escape the gunfire directed at it.  Two men from the house got into a Cadillac and began chasing the Mercedes.  The Cadillac eventually pulled in front of the Mercedes and several shots were fired at them.  Petitioner was hit twice.  Boo pulled out a gun and fired back in retaliation.  Petitioner denied harboring any animosity towards Weaver, Yerger or Wingfield.

C.  Outcome

The jury found petitioner guilty of two counts of attempted willful, deliberate and premeditated murder; malicious discharge of a firearm at an inhabited dwelling causing great bodily injury; and malicious discharge of a firearm from a motor vehicle causing great bodily

4

1    injury.  The jury also found true multiple gun use enhancement allegations, and found that all the

2    crimes were committed with specific intent to promote criminal conduct by a street gang.

3        The trial court found prior prison term and prior conviction allegations to be true.

4    Petitioner was sentenced to an indeterminate term of 205 years to life, plus a determinate term of

5    17 years.

6    II.    Post-Conviction Proceedings

7        Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of

8    conviction on February 8, 2011.  ECF No. 49-15.  The California Supreme Court denied review

9    on May 11, 2011.  ECF No. 49-17.

10       Petitioner filed a petition for writ of habeas corpus in the Superior Court of Sacramento

11   County, which was denied in a written decision on January 17, 2012.  ECF No. 49-18.  Petitioner

12   next filed a habeas petition in the California Court of Appeal, which was denied on April 5, 2012,

13   with citation to In re Steele, 32 Cal.4th 682, 692 (2004), and In re Hillery, 202 Cal. App.2d 293

14   (1962).  ECF No. 49-19.  Petitioner then filed a habeas petition in the California Supreme Court,

15   which was summarily denied on October 24, 2012.  ECF No. 49-20.

16                    STANDARDS GOVERNING FEDERAL HABEAS RELIEF

17       28 U.S.C. § 2254 provides in relevant part as follows:

18           (d) An application for a writ of habeas corpus on behalf of a person
             in custody pursuant to the judgment of a state court shall not be
19           granted with respect to any claim that was adjudicated on the merits
             in State court proceedings unless the adjudication of the claim –
20
21           (1) resulted in a decision that was contrary to, or involved an
             unreasonable application of, clearly established Federal law, as
             determined by the Supreme Court of the United States; or
22
23           (2) resulted in a decision that was based on an unreasonable
             determination of the facts in light of the evidence presented in the
             State court proceeding.
24

25       The statute applies whenever the state court has denied a federal claim on its merits,

26   whether or not the state court explained its reasons.  Harrington v. Richter, 562 U.S. 86, 99

27   (2011).  State court rejection of a federal claim will be presumed to have been on the merits

28   absent any indication or state-law procedural principles to the contrary.  Id. (citing Harris v. Reed,

                                                  5

1   489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a

2   decision appearing to rest on federal grounds was decided on another basis)).  "The presumption

3   may be overcome when there is reason to think some other explanation for the state court's

4   decision is more likely."  Id. at 99-100.

5        The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal

6   principle or principles" previously articulated by the Supreme Court.  Lockyer v. Andrade, 538

7   U.S. 63, 71-72 (2003).  Only Supreme Court precedent may constitute "clearly established

8   Federal law," but courts may look to circuit law "to ascertain whether…the particular point in

9   issue is clearly established by Supreme Court precedent."  Marshall v. Rodgers, 569 U.S. 58, 64

10  (2013).

11       A state court decision is "contrary to" clearly established federal law if the decision

12  "contradicts the governing law set forth in [the Supreme Court's] cases."  Williams v. Taylor, 529

13  U.S. 362, 405 (2000).  A state court decision "unreasonably applies" federal law "if the state

14  court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to

15  the facts of the particular state prisoner's case."  Id. at 407-08.  It is not enough that the state court

16  was incorrect in the view of the federal habeas court; the state court decision must be objectively

17  unreasonable.  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

18       Review under § 2254(d) is limited to the record that was before the state court.  Cullen v.

19  Pinholster, 563 U.S. 170, 180-181 (2011).  The question at this stage is whether the state court

20  reasonably applied clearly established federal law to the facts before it.  Id. at 181-182.  In other

21  words, the focus of the § 2254(d) inquiry is "on what a state court knew and did."  Id. at 182.

22  Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is

23  confined to "the state court's actual reasoning" and "actual analysis."  Frantz v. Hazey, 533 F.3d

24  724, 738 (9th Cir. 2008) (en banc).  A different rule applies where the state court rejects claims

25  summarily, without a reasoned opinion.  In Richter, supra, the Supreme Court held that when a

26  state court denies a claim on the merits but without a reasoned opinion, the federal habeas court

27  must determine what arguments or theories may have supported the state court's decision, and

28  subject those arguments or theories to § 2254(d) scrutiny.  Richter, 562 U.S. at 102.

6

1                                DISCUSSION

2        I.       Claim One: Sufficiency of the Evidence

3                A.  Petitioner's Allegations and Pertinent State Court Record

4                Petitioner alleges that his due process rights were violated by conviction on insufficient

5        evidence.  ECF No. 1 at 4.  He contends more specifically that (1) mere presence at the crime

6        scene and alleged gang membership are insufficient to support conviction of "the charged

7        offense"; (2) there was no evidence that petitioner personally used or personally and intentionally

8        discharged a firearm "in the commission of the charged offense"; (3) there was no scientific or

9        forensic evidence or witness testimony to establish that petitioner personally discharged a

10       firearm; and (4) there was insufficient evidence of shooting at a house.  Id. at 5.  The lengthy

11       sections of legal argument in support of this claim fail to clearly distinguish between the various

12       counts of conviction.  See id. at 7-38, 54-76.  Petitioner summarily references the insufficiency of

13       the evidence to sustain the attempted murder verdict, id. at 14; elsewhere addresses the charge of

14       malicious discharge of a firearm at an inhabited dwelling, id. at 37-38; and still elsewhere (in an

15       entirely different section of the petition) challenges the sufficiency of the evidence as to the gang

16       enhancement, id. at 62-76.[6]

17                B.  The Clearly Established Federal Law

18               Due process requires that each essential element of a criminal offense be proven beyond a

19       reasonable doubt.  United States v. Winship, 397 U.S. 358, 364 (1970).  In reviewing the

20       sufficiency of evidence to support a conviction, the question is "whether, viewing the evidence in

21       the light most favorable to the prosecution, any rational trier of fact could have found the essential

22       elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319

23       (1974).  If the evidence supports conflicting inferences, the reviewing court must presume "that

24       the trier of fact resolved any such conflicts in favor of the prosecution," and the court must "defer

25       to that resolution."  Id. at 326.  "A reviewing court may set aside the jury's verdict on the ground

26       of insufficient evidence only if no rational trier of fact could have agreed with the jury."  Cavazos

27       _____

28       [6]  Because the latter is presented in the context of Claim Two, which challenges admission of
         expert testimony from a gang expert, it will be addressed in that context below.

                                              7

1  v. Smith, 565 U.S. 1, 2 (2011).  Put differently, a verdict must stand unless it was "so

2  unsupportable as to fall below the threshold of bare rationality."  Coleman v. Johnson, 566 U.S.

3  650, 656 (2012).  In applying these principles, a court looks to state law for the substantive

4  elements of the criminal offense, but the minimum amount of evidence that the Constitution

5  requires to prove the offense "is purely a matter of federal law."  Id. at 655.

6          C.  The State Courts' Rulings

7              1.  Malicious Discharge of Firearm at an "Inhabited Dwelling"

8          On direct appeal, petitioner challenged the sufficiency of the evidence to support the

9  "inhabited dwelling" element of shooting into an inhabited dwelling.  Because the California

10  Supreme Court denied discretionary review, the opinion of the California Court of Appeal

11  constitutes the last reasoned decision on the merits and is the subject of habeas review in this

12  court.  See Ylst v. Nunnemaker, 501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th

13  Cir. 2012).

14          The appellate court ruled as follows:

15              Defendant claims there was insufficient evidence to support his
               conviction for shooting at an inhabited dwelling within the meaning
16              of section 246, because the People failed to prove that the garage was
               part of an occupied dwelling.
17

18              As the court held in *People v. Adams* (1982) 137 Cal.App.3d 346,
               354–355, "Section 246 by its express language does not limit itself
19              to an inhabited dwelling house, but rather includes any 'occupied
               building.' The term 'building' is a generic term meaning any edifice
20              or structure built by man. [Citation.] A 'building' is '[a] structure . .
               . [e]nclosing a space within its walls . . . .' [Citation.] The term
21              'building' would include such structures as outhouses, barns,
               garages, and an occupied building includes areas controlled by the
22              occupants, such as a garage." Thus, as defendant concedes, a person
               who shoots into "an attached garage" violates section 246. (*Adams*,
23              at p. 355.) Defendant asserts, however, there was no evidence that
               the Fell Street garage was attached to the house.

24              As the People point out, the jury was instructed that "[a] house
               includes any garage that is attached to the house and functionally
25              connected with it." (See CALCRIM No. 965.) Photographs of the
               Fell Street house "with white garage door on right" were introduced
26              into evidence without objection and defense counsel never argued to
               the jury that the garage was not attached to the house. Absent an
27              indication to the contrary, we may presume these photos filled the
               evidentiary lacuna of which defendant complains.
28

                                            8

1

2

3

> In his reply brief, defendant concedes the photographs were in evidence, but maintains that because the People failed to include them as part of the record, his claim of insufficient evidence should be credited.

4

5

6

7

8

9

10

11

> Defendant has the burdens backwards. A respondent has no burden to produce evidence to rebut a claim of insufficiency. Judgments are presumed correct in criminal as well as civil cases, and it is the appellant's burden to show error by an adequate record. (*People v. Carter* (2010) 182 Cal.App.4th 522, 531, fn. 6; *Osgood v. Landon* (2005) 127 Cal.App.4th 425, 435-436.) "One aspect of that burden requires that the appellant develop the fullest possible evidentiary record before seeking review." (*Villano v. Waterman Convalescent Hospital, Inc.* (2010) 181 Cal.App.4th 1189, 1200.) A judgment is conclusively presumed correct as to all matters on which the record is silent. (*Baker v. Children's Hospital Medical Center* (1989) 209 Cal.App.3d 1057, 1060.) Because defendant did not produce the photographic exhibits as part of the record on appeal, we must presume they would support the judgment. Hence, defendant's substantial evidence argument fails.

12

ECF No. 49-15 at 21-23.

13

### 2.   Attempted Murder and Charges Involving Use of a Firearm

14

Petitioner's challenge to the sufficiency of the evidence that he discharged a firearm,

15

construed liberally as directed to all four counts of conviction and the firearms enhancements,[7]

16

was presented to the state courts in habeas.  Because the California Supreme Court denied this

17

claim without comment, this court "looks through" the silent denial to the last reasoned state

18

court decision.  See Ylst v. Nunnemaker, 501 U.S. 797 (1991).  The Court of Appeals denied the

19

petition without discussion but with citation to In re Steele, 32 Cal.4th 682, 692 (2004), and In re

20

Hillery, 202 Cal. App.2d 293 (1962).[8]  ECF No. 49-19.  The superior court had previously issued

21

a written decision, ruling in pertinent part as follows:

22

////

23

////

24

[7]  Discharge of a firearm is an element of the offenses of discharge of a firearm at an inhabited

25

dwelling or occupied building, and of discharge of a firearm from a motor vehicle.  As to the attempted murder counts, the prosecution alleged that petitioner was the shooter.  The jury was

26

instructed that attempted murder requires proof that the defendant took a direct but ineffective step toward killing another person, and did so with intent to kill.

27

[8]  Both cases hold that a habeas petition may be denied if it has not previously been filed in a

28

lower court.  As the traverse points out, this procedural bar appears to have been applied in error as the petition had been presented to the superior court.  See ECF No. 53 at 5, n.3.

1    Petitioner also claims that the prosecutor failed to prove beyond a
     reasonable doubt that petitioner committed the charged offenses.

2

3    Petitioner fails to attach any reporter's transcript of the trial to
     support this claim, requiring its denial under *Harris* [*in re Harris*
     (1993) 5 Cal.4th 813, 829]. Rather, the Third District Court of

4    Appeal's opinion on the appeal of the matter clearly shows proof
     beyond a reasonable doubt of each charged offense and

5    enhancement. As such, the claim fails (*Bower, supra* [*In re Bower*
     (1985) 38 Cal.3d 865].

6

7    Petitioner also claims that the prosecutor failed to prove beyond a
     reasonable doubt that petitioner personally used or personally

8    discharged a firearm in the commission of the charged offenses. He
     claims that the statute did not allow a true finding based on
     accomplice liability. He also claims that the prosecutor failed to

9    provide any scientific or forensic evidence or witness testimony to
     establish that he personally discharged a firearm.

10

11   Petitioner, however, admits that during the trial, the prosecutor
     played a videotape of victim Weaver telling police that petitioner was
     the shooter, had hung out the window, and had shot with a silver gun,

12   and that the prosecutor also played an audiotape of victim Yerger
     pointing to petitioner's photo and identifying petitioner as the shooter

13   when Yerger was shown the lineup. Petitioner argues that other trial
     testimony contradicted these statements, but on habeas corpus a court

14   does not reweigh the evidence to determine its sufficiency (*see
     generally People v. Rodriguez* (1999) 20 Cal.4th 1 [standard of

15   review on appeal of sufficiency of evidence claim]). A jury could
     have believed these statements of victim Weaver and victim Yerger

16   and chosen to disbelieve any other statement by them or testimony
     by others to the contrary; their identification of petitioner as the

17   shooter constituted evidence beyond a reasonable doubt that
     petitioner personally used and discharged a firearm during the

18   commission of the crimes. As such, the claim fails (*Bower, supra*).

19   ECF No. 49-18 at 3.

20       The superior court further held as follows:

21   Petitioner also claims that evidence of mere presence at the crime
     scene and of gang membership is insufficient to establish that

22   petitioner committed and/or aided and abetted the charged offenses.

23   The evidence at trial, however, did not establish that petitioner was
     merely present at the scene or was a mere member of the gang.

24   Rather, the summary of the evidence contained in the Third District's
     opinion on the appeal in this matter clearly shows that petitioner and

25   his cohorts purposely armed themselves and drove to a residence
     specifically to kill a rival gang member whom they believed had shot

26   a member of their gang, and that this was their third attempt to do so.
     And, as noted above, victims Weaver and Yerger identified petitioner

27   as being the shooter. The claim fails (*Bower, supra*).

28

                                  10

Petitioner also claims that the evidence was insufficient to show the predicate gang offenses needed to prove the gang enhancement. He claims that the 2002 trial and conviction of Javon Jordan was not sufficient proof because the prosecutor failed to provide sufficient details of the circumstances of that crime and that it was for the benefit of a street gang, and because Jordan was not convicted of a gang enhancement. He also claims that the second predicate offense, of an assault of Henley by the gang, was not sufficient proof because there was no evidence that it was committed for the benefit of a gang.

Petitioner fails to attach reporter's transcript of the evidence that was introduced at trial regarding either of these predicate offenses. As such, the court cannot assess whether sufficient evidence was introduced to show that the predicate offenses were committed for the benefit of the gang (*see Harris, supra*).

Petitioner also claims that the evidence is insufficient to support a finding that the shooting was committed for the benefit of the gang, or with the specific intent to further the criminal conduct by gang members. Not so. As noted above, the summary of the evidence contained in the Third District's opinion on the appeal in this matter clearly shows that petitioner and his cohorts purposely armed themselves and drove to a residence specifically to kill a rival gang member whom they believed had shot a member of their gang, and that this was their third attempt to do so. As such, the claim fails (*Bower, supra*).

ECF No. 49-18 at 4-5.

    D.  Objective Reasonableness Under § 2254(d)

        1.  The California Court of Appeal Reasonably Found That the Evidence

           Supported a Finding That the Shooter Fired at an "Inhabited Dwelling"

Petitioner's theory of insufficiency is predicated on an interpretation of state law—that conviction is permissible only upon proof that the garage into which shots were fired was physically attached to the house—that has been rejected by the state courts and is contrary to the plain language of the statute.[9]  See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (per curiam) (state courts' interpretation of state law is binding on federal habeas court).  Setting that issue aside, and considering only whether the prosecution presented evidence sufficient to prove the

---

[9]  The statute under which petitioner was charged expressly prohibits the malicious and willful discharge of a firearm "at an inhabited dwelling house" or "occupied building."  Cal. Penal Code § 246; see also People v. Adams, 137 Cal.App.3d 346, 354–355 (1982).  However, the jury was instructed only on shooting into "an inhabited house," defined as including "any garage that is attached to the house and functionally connected with it."  III CT 788 (ECF No. 49-3 at 188).

1    "inhabited house" theory that was offered to the jury, the state court was required under <u>Jackson</u>

2    to view the evidence in the light most favorable to the verdict and presume that all inferences

3    from the evidence were drawn in favor of the prosecution.  It did so.  The court correctly noted

4    that the jury had been provided photographic evidence of the house and garage, from which it was

5    entitled to draw conclusions about the necessary degree of relatedness.  The appellate court was

6    required to defer to that jury finding unless it was "so unsupportable as to fall below the threshold

7    of bare rationality."  <u>Coleman</u>, 566 U.S. at 656.

8            Finally, the appellate court correctly applied <u>Jackson</u> in its allocation of the burden on

9    post-conviction sufficiency review.  <u>See Juan H. v. Allen</u>, 408 F.3d 1262, 1274 (9th Cir. 2005)

10   (recognizing the "heavy burden" on petitioner to rebut presumptions in favor of the verdict).

11   Because petitioner made no showing that the photographic evidence was rationally incompatible

12   with a rational jury finding that the garage and house were attached, federal habeas relief is

13   unavailable.

14               2.   <u>The State Habeas Courts Reasonably Concluded that the Evidence Supported a</u>

15                    <u>Finding That Petitioner Discharged a Firearm</u>

16           The superior court's resolution of this issue fully comports with <u>Jackson</u> and progeny, and

17   provides an objectively reasonable basis for denial of the claim.[10]  This is not a complicated issue.

18   The jury heard evidence that three eyewitnesses, including both victims, had identified petitioner

19   as the shooter.  It is quite true that all three denied at trial that they could identify the shooter, and

20   that the identification evidence came in through the witnesses' prior statements to law enforcement

21   investigators.  However, the jury was entitled to credit the out of court statements and the results

22   of the photo lineups.  The jury saw videotape and heard audiotape of the identifications, and was

23   _____

24   [10]  To the extent that the decision of the Court of Appeals can be considered the "last reasoned
     decision" within the meaning of <u>Ylst</u>, 501 U.S. at 806, the analysis is the same.  The appellate
25   court's mistaken application of a state procedural rule, <u>see supra</u> n. 8, does not constitute an
     unreasonable application of clearly established federal law within the meaning of § 2254(d).  In
26   any event, when a federal claim is denied by a state court on procedural grounds, the claim is
     reviewed <i>de novo</i>.  <u>Riley v. McDaniel</u>, 786 F.3d 719, 723 (9th Cir. 2015).  To the extent if any
27   that the Court of Appeal's ruling could be considered a procedural bar creating a default, the court
     chooses to bypass that issue and reach the merits.  <u>See Lambrix v. Singletary</u>, 520 U.S. 518, 525
28   (1997).

1    able to weigh the reliability of those statements against the circumstances of the in-court testimony.

2    Reviewing courts are required to defer to the jury's credibility determinations.  See Cavazos, 565

3    U.S. at 7-8; see also Schlup v. Delo, 513 U.S. 298, 330 (1995) ("under Jackson, the assessment of

4    the credibility of witnesses is generally beyond the scope of review.").  Petitioner's attempt to

5    relitigate the reliability of the identifications and the weight of the evidence exceeds the permissible

6    scope of Jackson review.

7         Because there was direct evidence that petitioner shot at the people in the garage, the verdict

8    cannot have been irrational.  The fact that the evidence was contested does not change this.  The

9    absence of "scientific or forensic" evidence does not change this.  Moreover, it is simply untrue

10   that petitioner was convicted on the basis of "mere presence" and gang membership.  Particularly

11   in light of the "double dose of deference" to the verdict that is required under Jackson and the

12   federal habeas statute, Boyer v. Belleque, 659 F.3d 957, 964 (9th Cir. 2011), relief is unavailable.

13   Even under de novo review, the record does not support relief under Jackson for the reasons

14   explained by the state court.

15        II.    Claim Two: Admission of Prejudicial Gang Expert Testimony

16               A.    Petitioner's Allegations and Pertinent State Court Record

17        Petitioner alleges that "[t]he trial court committed prejudicial error in discretion by

18   allowing the admissibility of gang expert testimony on the alleged gang's primary activity and

19   whether the appellant was an 'active participant' of a criminal street gang."  ECF No. 1 at 4.

20   Petitioner's supporting argument encompasses multiple discrete issues related to the gang

21   enhancement and related evidence: impermissible hearsay conveyed by the gang expert (which

22   the court construes as a challenge under the Confrontation Clause); insufficient evidence to prove

23   the alleged primary activity of the gang; insufficient evidence that petitioner was an "active

24   participant" in the gang; and impermissible propensity evidence.  See id. at 39-53, 77-84.

25               B.    The Clearly Established Federal Law

26        The erroneous admission of evidence violates due process only if the evidence is so

27   irrelevant and prejudicial that it renders the trial as a whole fundamentally unfair.  Estelle v.

28   McGuire, 502 U.S. 62 (1991).  Otherwise, evidentiary ruling are matters of state law that do not

1   support federal habeas relief.  Id. at 67-68; see also Pulley v. Harris, 465 U.S. 37 (1984).  The

2   Supreme Court has rejected the argument that due process necessarily requires the exclusion of

3   prejudicial or unreliable evidence.  See Spencer v. Texas, 385 U.S. 554, 563-564 (1967); Perry v.

4   New Hampshire, 565 U.S. 228, 245 (2012).

5         To the extent this claim challenges the evidentiary sufficiency of the expert testimony to

6   establish the primary activity of the gang and petitioner's active involvement in the gang, the

7   governing federal precedent is that set forth above in relation to Claim One.  See Jackson v.

8   Virginia, supra.

9         To the extent petitioner objects to the introduction of hearsay through the expert witness,

10  the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the

11  right to . . . be confronted with the witnesses against him."  The Confrontation Clause prohibits

12  the admission of testimonial out-of-court statements by non-testifying individuals. Crawford v.

13  Washington, 541 U.S. 36 (2004).  Not all hearsay implicates the core concerns of the

14  Confrontation Clause; the dispositive question is whether the statement is "testimonial."  Id. at 51.

15  A statement is testimonial only when its primary purpose is the development of evidence to

16  support a prosecution.  Davis v. Washington, 547 U.S. 813, 822 (2006); Michigan v. Bryant, 562

17  U.S. 344, 359 (2011).

18            C.  The State Court's Ruling

19        The superior court ruled in pertinent part as follows:

20              Petitioner first claims that his confrontation rights under *Crawford v.
21              Washington* (2004) 541 U.S. 36 were violated by incompetent
                hearsay testimony solicited by the prosecutor from the gang expert
22              witness Detective Robinson, regarding whether petitioner had
                actively participated in a criminal street gang and what the primary
23              activities of the gang were. He also claims that the hearsay testimony
                violated *People v. Kelly* (1976) 17 Cal.3d 24.

24              Petitioner fails to attach a copy of reporter's transcript of any hearsay
                testimony from the expert, requiring denial of the claim (*In re Harris*,
25              supra, 5 Cal. 4th 813, 827 fn. 5). Nor does petitioner specify whether
                the expert was testifying about the basis of the expert's opinion,
26              which is not introduced for the truth of the matter asserted and
                therefore is not hearsay or subject to *Crawford* (*People v. Ramirez*
27              (2007) 153 Cal.App.4th 1422).

28

                                        14

As for *Kelly*, that has been held not to apply to a gang expert's opinion in California (*People v. Hill* (2011) 191 Cal.App.4th 1104). Petitioner's argument under *Daubert v. Merrell Dow Pharmaceuticals* (1993) 509 U.S. 597 and its progeny is irrelevant, as the California Supreme Court has long rejected the *Daubert* rule and instead continues to adhere to *Kelly* (*People v. Leahy* (1994) 8 Cal.4th 587).

For these reasons, the first claim fails (*Bower, supra*).

Petitioner also claims that the jury was not instructed on the "element" of active participation in a gang and that this "element" was not proven beyond a reasonable doubt. Petitioner, however, was not convicted of a Penal Code§ 186.22(a) substantive gang offense. Rather, a Penal Code § 186.22(b) gang enhancement was found true. Active participation in a street gang is an element of a Penal Code§ 186.22(a) substantive gang offense but not of a Penal Code§ 186.22(b) (1) gang enhancement (*see generally In re Ramon T.* (1997) 57 Cal.App.4th 201). Gang membership may be relevant to whether petitioner committed the charged offenses in furtherance of the gang, but it is not an element of the gang enhancement and did not need to be proven beyond a reasonable doubt. For this reason, this claim fails (*Bower, supra*).

Petitioner also claims that the evidence was insufficient to show the primary activities of the gang, for purposes of the gang enhancements. Petitioner fails to attach any reporter's transcript of the trial to support this claim, requiring its denial under *Harris*.

Further, petitioner admits that the gang expert Robinson did testify that the primary activities of the gang were drug sales, drug rip-offs, assault with a deadly weapon, assault, battery, homicide, burglaries, auto thefts, and attempted murders. Petitioner does not attach any reporter's transcript to show that the admission of this testimony violated *People v. Gardeley* (1996) 14 Cal.4th 605.

For these reasons, this claim fails (*Bower, supra*).

ECF No. 49-18 at 1-3.

D. <u>Objective Reasonableness Under § 2254(d)</u>

To the extent petitioner intends to challenge the trial court's exercise of its discretion under the California Evidence Code, he fails to present a cognizable claim for federal habeas relief.  <u>See</u> <u>Estelle</u>, 502 U.S. at 67.  To the extent that petitioner alleges admission of the expert testimony violated due process because the evidence was unduly prejudicial or otherwise inadmissible (including as propensity evidence), the claim fails because no U.S. Supreme Court precedent has found the admission of gang expert testimony in particular, or prejudicial evidence more generally, to violate due process.  <u>See</u> <u>Wright v. Van Patten</u>, 552 U.S. 120, 125-26 (2008)

15

(per curiam) (if no Supreme Court precedent controls a legal issue raised by a habeas petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law; see also Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (Supreme Court has not clearly held that the "admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ."); Briceno v. Scribner, 555 F.3d 1069, 1077 (9th Cir. 2009) (rejecting habeas challenge to gang expert's testimony because "there is no clearly established constitutional right to be free of an expert opinion on an ultimate issue"), overruled on other grounds as recognized in Emery v. Clark, 643 F.3d 1210, 1215 (9th Cir. 2011) (per curiam); Alberni v. McDaniel, 458 F.3d 860, 866 (9th Cir. 2006) (recognizing that U.S. Supreme Court has never held propensity evidence violates due process), cert. denied, 549 U.S. 1287 (2007).

To the extent that petitioner contends his confrontation rights were violated by the expert's reliance on or repeating of hearsay, the claim also fails for lack of clearly established federal law.  No U.S. Supreme Court precedent establishes that testimony by a gang expert, similar to the testimony challenged here, is testimonial.  Neither has the U.S. Supreme Court ever held that a gang expert's reliance on hearsay testimony violates a defendant's Confrontation Clause rights under Crawford.  See Hill v. Virga, 588 F. App'x 723, 724 (9th Cir. 2014) ("The Supreme Court has not clearly established that the admission of out-of-court statements relied on by an expert violate the Confrontation Clause."); Lopez v. Davey, 2015 U.S. Dist. LEXIS 107553, 2015 WL 4776434, *18 (N.D. Cal. 2015) ("There is no clearly established Supreme Court authority that admission of hearsay statements relied on by an expert violates the Confrontation Clause."); Hernandez v. Montgomery, 2020 U.S. Dis. LEXIS 171635 at *21, 202 WL 5606919 (C.D. Cal. 2020) (same).

Finally, to the extent petitioner alleges that the expert testimony fails to support the gang enhancement within the meaning of Jackson v. Virginia, supra, the claim fails because the testimony provided a rational basis for the jury to conclude both that petitioner was an active participant in the Nogales Crips and that the gang's primary activities included drug sales, drug

////

16

1    rip-offs, assault with a deadly weapon, assault, battery, homicide, burglaries, auto thefts, and

2    attempted murders.

3          For all these reasons, federal habeas relief is unavailable.

4    III.    Claim Three: Failure to Transcribe Audiotape of Victim Statement Victim

5          A.    Petitioner's Allegations and Pertinent State Court Record

6          Petitioner alleges that "[t]he trial court erred in its discretion by stipulating that court

7    reporter needed not record victim Yerger statements on 'audio tape' of interrogation by Detective

8    Brown allegedly identifying Petitioner as perpetrator of charged offense."  ECF No. 1 at 85, 86-

9    88.

10          The trial record reflects the parties' stipulation at trial that the court reporter need not

11   transcribe the Yeger interview as the audiotape was played.  II RT 378 (ECF No. 49-6 at 82).  A

12   transcript of the interview, marked as People's Exhibit 72-A, was provided to the jurors and

13   entered into evidence.  Id. at 377 (ECF No. 49-6 at 81); III CT 748 (ECF No. 49-3 at 148).  That

14   transcript was included in the Clerk's Record on Appeal.  III CT 760-769 (ECF No. 49-13 at 160-

15   169).

16          B.    The Clearly Established Federal Law

17          A criminal defendant has a due process right to a "record of sufficient completeness" to

18   ensure meaningful appellate review.  Coppedge v. United States, 369 U.S. 438, 446 (1962).  This

19   constitutional obligation may be satisfied by the provision of a stenographer's transcript of the

20   proceedings at issue, or by alternative methods which "place before the appellate court an

21   equivalent report of the events at trial from which the appellant's contentions arise."  Draper v.

22   Washington, 372 U.S. 487, 495 (1963); see also Mayer v. City of Chicago, 404 U.S. 189, 194-

23   195 (1971).

24          To the extent that petitioner challenges admission of the Yerger audiotape into evidence,

25   evidentiary errors violate due process only when they render the trial as a whole fundamentally

26   unfair.  Estelle, 502 U.S. at 67.

27   ////

28   ////

C. <u>The State Court's Ruling</u>

The superior court ruled in pertinent part as follows:

> Petitioner also claims that the introduction of Detective Brown's interview of victim Yerger was fundamentally unfair because the audiotape was inaudible and because the interview was not videotaped.
>
> The court's underlying file belies the claim. The People's Exhibit 72A consisted of a transcript of the redacted 10-page interview by Detective Brown of victim Yerger, and a copy of that transcript is contained in the court's underlying file for the case as part of the case record. The transcriber did find portions of the tape to be unintelligible or inaudible; however, if the transcriber found those portions to be such, [it is] reasonably probable that any person listening to the tape would find those portions to be such. Nevertheless, a "digital video disc" of the interview of Yerger was contained in People's Exhibit 72 and admitted into evidence, thus was available to any reviewing court. As such, there was no fundamental unfairness in playing the audiotape to the jury.
>
> Nor did petitioner have any right to have interviews of victims and witnesses videotaped (cf. *People v. Marshall* (1990) 50 Cal.3d 907 [no requirement that any *Miranda* waiver be tape-recorded; not required by due process or fundamental fairness principles]).
>
> For these reasons, the claim fails (*Bower, supra*).
>
> Petitioner also claims that the trial court erred in allowing the parties to stipulate that the court reporter need not transcribe the Yerger audiotape when it was played for the jury, because that failed to preserve it for appellate review.
>
> As noted above, the statement was already transcribed and the transcription was placed in the court's underlying file for the case, thus was part of the record on appeal; in addition, because the tape itself was introduced into evidence as an exhibit, it was available to the reviewing courts on direct appeal. As such, the claim fails (*Bower, supra*).

ECF No. 49-18 at 3-4.

D. <u>Objective Unreasonableness Under § 2254(d)</u>

The state court reasonably rejected petitioner's fundamental fairness argument as to admission of the Yeger interview.  The jury had the opportunity to listen to the interview and to review a transcript.  Any audibility problems were properly considered by jurors in deciding what weight to give the evidence.  Petitioner has identified nothing specific about the audio quality which resulted in unfairness.  The substance of the interview involved Yeger's identification of

18

1    petitioner as the shooter, which has been discussed above.  Two other eyewitnesses, including the

2    other victim, also identified petitioner as the shooter.  In light of the trial record as a whole, the

3    allegation of fundamental unfairness fails.

4          The state court also reasonably rejected the claim that petitioner's rights were violated by

5    the failure of the court reporter to transcribe the interview while the audiotape was being played

6    for the jury.  The interview had been transcribed prior to trial, the transcript was in evidence, and

7    the transcript was made part of the record on appeal by inclusion in the Clerk's Transcript.

8    Accordingly, petitioner was not denied a "record of sufficient completeness" to ensure

9    meaningful appellate review.  See Coppedge, 369 U.S. at 446.  This claim accordingly fails under

10   any standard of review.

11         IV.    Claim Four: Ineffective Assistance of Counsel

12                A.  Petitioner's Allegations and Pertinent State Court Record

13         Petitioner alleges that his trial counsel provided "insufficient assistance of counsel where

14   counsel failed to present favorable evidence by not investigating potential claims [and] counsel

15   failed to object to prosecutorial misconduct."  ECF No. 1 at 85, 89.  As to failure to investigate

16   and to present favorable evidence, petitioner alleges as follows:

17   •   Counsel failed to investigate victim Yeger's culpability for shooting at petitioner, and to

18       call homicide detective Woods to testify about outstanding evidence that would support

19       that theory, id. at 93;

20   •   Counsel failed to call the crime scene investigator/photographer to testify (1) that no

21       physical evidence showed shots were fired into the garage, and (2) that shots were fired

22       from the garage, id. at 93-94;

23   •   Counsel failed to provide a crime scene expert and reconstruction of the scene to show

24       that Yeger was shot not from the Mercedes but when the occupants of the garage shot out

25       from the garage at the Mercedes, id. at 94.

26         Regarding counsel's failure to object to prosecutorial misconduct, petitioner alleges that it

27   was misconduct for the prosecutor to elicit an opinion on the ultimate issue from the gang expert.

28   Id. at 89, 100-102.  He also alleges that the prosecutor committed misconduct by "diluting his

                                                     19

burden of proving the elements of the charged offense." <u>Id.</u> at 103 (spelling corrected).  The

supporting facts include allegedly prejudicial statements that the judge and the prosecutor made

during jury selection about the meaning of the reasonable doubt standard, and the prosecutor's

discussion in closing argument about reasonable doubt and "abiding conviction."  <u>Id.</u> at 103-105.

### B. The Clearly Established Federal Law

To establish a constitutional violation based on ineffective assistance of counsel, a

petitioner must show (1) that counsel's representation fell below an objective standard of

reasonableness, and (2) that counsel's deficient performance prejudiced the defense.  <u>Strickland v.</u>

<u>Washington</u>, 466 U.S. 668, 692, 694 (1984).  Prejudice means that the error actually had an

adverse effect on the defense.  There must be a reasonable probability that, but for counsel's

errors, the result of the proceeding would have been different.  <u>Id.</u> at 693-94.  The court need not

address both prongs of the <u>Strickland</u> test if the petitioner's showing is insufficient as to one

prong.  <u>Id.</u> at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of

sufficient prejudice, which we expect will often be so, that course should be followed."  <u>Id.</u>

### C. The State Court's Ruling

The superior court ruled in pertinent part as follows:

> Petitioner also claims that trial counsel was ineffective in failing to present favorable evidence such as by calling Detective Woods to testify about outstanding evidence or the crime scene investigator who responded to the crime and photographed the scene, in failing to object to prosecutorial misconduct during opening and closing statements, failing to make timely objections, in failing to preserve issues for appellate review, and in failing to object to the prosecutor mischaracterizing the evidence and referring to facts not supported by the evidence.

> Petitioner fails to give any further detail or to support the claim with documentary evidence, requiring denial under *Swain, supra*, and *Harris, supra*.

ECF No. 49-18 at 5.

### D. Objective Unreasonableness Under § 2254(d)

To the extent the state courts rejected this claim pursuant to state procedural rules,[11] the

---

[11]  <u>See</u> ECF No. 49-18 (superior court order) at 5; ECF No. 49-10 (Court of Appeal order) at 1.

1    claim is arguably procedurally defaulted and cannot be considered here absent a showing of cause

2    and prejudice.  See Coleman v. Thompson, 501 U.S. 722, 729 (1991).  Bypassing that issue, see

3    Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002), relief is unavailable under any standard

4    of review because petitioner fails to allege a prima facie case of ineffective assistance.

5           As for the allegations of failure to investigate and present exculpatory evidence,

6    petitioner's claim fails for lack of any prejudice showing.  Petitioner provides no specific

7    allegations, let alone any witness declarations, to show what testimony Detective Woods, the CSI

8    investigator, or a defense forensic expert would have provided.  Accordingly, the claim is purely

9    conclusory and cannot support relief.  See Wildman v. Johnson, 261 F.3d 832, 839 (9th Cir.

10   2001) (no ineffective assistance of counsel for failing to retain expert where petitioner did not

11   offer evidence that expert would have testified); Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir.

12   1997) (speculation about unpresented evidence, including expert testimony, is not enough to

13   establish prejudice from ineffective assistance); Hendricks v. Calderon, 70 F.3d 1032, 1042

14   (1995) (absent a specific account of what beneficial evidence would have been revealed by

15   further investigation, petitioner cannot meet the prejudice prong of Strickland).

16          Regarding the allegations that counsel failed to object to prosecutorial misconduct, the

17   record does not reflect any objectionable misconduct and counsel therefore cannot have

18   performed unreasonably.  As for the presentation of the gang expert's testimony, this was

19   permissible under California law and no clearly established federal law forbids the elicitation of

20   such an opinion.  See Briceno, 555 F.3d at 1077.  As for the prosecutor's allegedly improper

21   statements about the burden of proof, none of the identified statements threatened the fairness of

22   the trial such that a defense objection was required.  Moreover, both in jury selection and in

23   closing argument, the defense had the opportunity to address the burden of proof and correct any

24   misimpression.  Reasonable counsel could well have decided objections were unnecessary given

25   the opportunity to independently address the matter.

26          Moreover, petitioner cannot establish any prejudice from the failure to object to the

27   prosecutor's alleged misconduct.  The jury was correctly instructed on the burden of proof, the

28   elements of the gang enhancements, and the evaluation of expert opinion testimony.  In light of

1  the evidence presented and the trial record as a whole, there is no reasonable likelihood that

2  defense objections on these issues would have resulted in a more favorable verdict.

3      For all these reasons, petitioner has failed to present a prima facie case under Strickland

4  and habeas relief is unavailable.

5      V.   Claim Five: Denial of Expert Witness Appointment

6          A.   Petitioner's Allegations and Pertinent State Court Record

7      Petitioner alleges that his rights were violated by the trial court's denial of a pretrial

8  motion for appointment of an expert witness at public expense.  ECF No. 1 at 111, 112-114.  No

9  details are provided regarding the expert witness petitioner sought to retain, or what evidence that

10  person could have provided.

11      The Clerk's Transcript on Appeal contains what appears to be a form motion for

12  appointment of an expert, partially filled in by petitioner in pro se.  III CT 663-673 (ECF No. 49-

13  3 at 63-73).  This motion does not specify the expert to be retained, or the field of expertise

14  required.  Id.  The motion was denied.  I CT 35 (ECF No. 49-1 at 46) (minute order 7/10/07).

15          B.   The Clearly Established Federal Law

16      The Constitution guarantees to criminal defendants the right to present a defense.

17  Chambers v. Mississippi, 410 U.S. 284 (1973); Crane v. Kentucky, 476 U.S. 683, 690 (1986).

18  When an indigent criminal defendant demonstrates that his sanity at the time of the offense is to

19  be a significant fact at trial, he is entitled to the appointment of a defense mental health expert.

20  Ake v. Oklahoma, 470 U. S. 68, 83 (1985); McWilliams v. Dunn, 582 U.S. 183 (2017).  Outside

21  the mental health context, the Supreme Court has not clearly established a constitutional right to

22  the appointment of experts.  Indeed, the Supreme Court has expressly declined to decide whether

23  indigent criminal defendants have a constitutional right to investigative and ancillary services.

24  See Caldwell v. Mississippi, 472 U.S. 320, 323 n. 1 (1985).

25          C.   The State Court's Ruling

26      The superior court ruled in pertinent part as follows:

27          Petitioner also claims that the trial court erred in denying Petitioner's
            pretrial motion for an expert witness on gangs.

28

22

> A habeas corpus petition must state with particularity the facts upon which the petitioner is relying to justify relief (*In re Swain* (1949) 34 Cal.2d 300), and be supported by reasonably available documentary evidence or affidavits (*In re Harris, supra*, 5 Cal.4th 813, 827 fn. 5). Petitioner fails to do either, requiring denial of the claim.

ECF No. 49-18 at 5.

### D. Objective Unreasonableness Under § 2254(d)

To the extent the state courts rejected this claim pursuant to state procedural rules,[12] it is procedurally defaulted and cannot be considered here absent a showing of cause and prejudice. Coleman, 501 U.S. at 729.  Bypassing that issue, see Franklin, 290 F.3d at 1232, relief is unavailable because the U.S. Supreme Court has never announced the constitutional right that petitioner asserts.  See Wright, 552 U.S. at 125-26.

It appears that the motion for appointment of an expert at public expense was filed by petitioner in *pro se* during the brief period that he was exercising his self-representation rights under Faretta.  See III CT 663-673 (ECF No. 49-3 at 63-73).  The motion did not specify the sort of expert that petitioner sought or why expert assistance was needed; there are no such allegations in the petition.  In Caldwell v. Mississippi, supra, the U.S. Supreme Court held that the trial court's refusal to appoint various experts to assist the defendant did not deprive him of his constitutional rights because the defendant had offered the trial court no more than "undeveloped assertions" that the requested assistance would be beneficial.  Caldwell, 472 U.S. at 323 n. 1.  The same is true here.  Caldwell thus precludes relief on this claim.

### CONCLUSION

For all the reasons explained above, the state courts' denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d).  Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned

---

[12]  See ECF No. 49-18 (superior court order) at 5; ECF No. 49-10 (Court of Appeal order) at 1.

1   "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

2   he shall also address whether a certificate of appealability should issue and, if so, why and as to

3   which issues.  See 28 U.S.C. § 2253(c)(2).  Any reply to the objections shall be served and filed

4   within fourteen days after service of the objections.  The parties are advised that failure to file

5   objections within the specified time may waive the right to appeal the District Court's order.

6   Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

7   DATED: October 29, 2024

8   ALLISON CLAIRE

9   UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28